Tomas SANCHEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 37204.

Court of Criminal Appeals of Texas.

Nov. 18, 1964.

Rehearing Denied Dec. 16, 1964.

Second Motion for Rehearing Denied Jan. 20, 1965.

Eugene Coffey, Corpus Christi (on appeal only), for appellant.

Sam L. Jones, Jr., Dist. Atty., W. De-Witt Alsup, Douglas Tinker and Clifford L. Zarsky, Asst. Dist. Attys., Corpus Christi, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The conviction is for burglary with a prior conviction for an offense less than capital alleged for enhancement; the punishment, 12 years.

In view of our disposition of this cause, a recitation of the facts will not be deemed necessary other than to observe that the appellant and Rodriquez were seen walking down Carrizo Street about 11:20 p. m. by Officers Mathis and Roberts, and that when the officers saw them Rodriquez turned his back toward them and shifted the can he was carrying in his right hand to underneath his left arm. A search was made of the person of both men and the tomato crate and other food containers they carried and testimony was admitted and a part of the fruits of the search was introduced as an exhibit for the State. Appellant objected to any evidence secured by the search on the ground that the arrest of appellant was illegal and without a warrant, which objection was overruled by the court.

The appellant did not testify or offer any evidence.

This conviction stands or falls upon the legality of that arrest. If the officers were authorized to arrest the appellant, the search of his person was authorized as an incident of his arrest. If they were not authorized to make the arrest without a warrant, then the search of appellant was unlawful, and proof of the finding of the fruits of the burglary was not authorized.

We have concluded that appellant's arrest and search by the officers without a warrant were, under the facts presented, not authorized by Articles 212 and 215 Vernon's Ann.C.C.P., and since no city ordinance authorized by Article 214, V.A.C. C.P., was introduced into evidence, the testimony concerning the fruits of the search should not have been admitted. Articles 212, 215 and 727a V.A.C.C.P.; Lott v. State, Tex.Cr.App., 372 S.W.2d 325, and cases cited therein.

This is a far stronger case than that before this Court in Lott v. State, supra. In that case the officers *knew* that a robbery had occurred and *were waiting* for Lott at his apartment, while in the case at bar the officers, at the time of the arrest, were not aware that any burglary had occurred.

For the error of the court in admitting the evidence illegally obtained, the judgment is reversed and the cause remanded.

## ON STATE'S SECOND MOTION FOR REHEARING

Rehearing overruled.

WOODLEY, Judge (dissenting).

The reversal of this conviction was predicated upon the conclusion that appellant's arrest without a warrant, under the facts presented, was not authorized by Art. 212 and 215 C.C.P., and since no city ordinance authorized by Art. 214 was introduced in evidence, the testimony concerning the fruits of the search should not have been admitted.

The state urges that, apart from the ordinance, the officers had the right to detain appellant and his companion Rodriguez momentarily for routine interrogation, a right recognized by the Supreme Court in Rios v. United States, 364 U.S. 253, 80 S. Ct. 1431, 1436, 4 L.Ed.2d 1688, and Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, as necessary to meet the practical demands of criminal investigation.

The state further argues that there was no actual arrest until the officers had questioned the appellant in regard to the open carton or crate in his hand and discovered that he was lying about where he had procured the items it contained.

The state's motion points out that the police officers were on routine patrol when they observed appellant and Rodriguez walking north on Carrizo, about 10:20 P.M. Appellant had a box or crate under one arm and a pan in his right hand. As the officers turned a corner Rodriguez recognized them as police and shifted the can he was carrying from his right hand to underneath his left arm where it was not in view. The officers backed the car beside the men and got out to talk to them.

Rodriguez was asked what he had in the can and he answered that he did not know as it belonged to appellant.

Appellant was asked where he was going and he said he was going to his home on Lake Street.

The officers knew that appellant could not be going to that place because there was a 7 foot hurricane fence blocking his path.

The tomato crate which appellant had in his hand contained two half gallons of milk, two oranges, two dozen eggs, two packages of hamburger buns and cold drinks. When asked where he got "the stuff" appellant replied that he got it at "Barney's" on Port at about 8 P.M. The officers knew there was no such place.

The ordinance of the City of Corpus Christi not having been introduced, the admissibility of the evidence must be considered as though the incident occurred outside the limits of a city or town and the officers were peace officers other than city police.

The facts stated are deemed by the writer to be sufficient to show probable cause to search the appellant. Also, his arrest at this point was lawful under Art. 325 C.C.P. which provides:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

The officers asked Rodriguez if he would open the can that he had and he did. In it were such items as frozen meat, frozen chickens, bacon, and a hunk of cheese.

The cheese was *the only wrapped item* in the can. On it was written "Nu-Way".

Observing that some of the contents of the can were frozen and the cold drink bottles in the box were cold, the officers were satisfied that these items had not been obtained "about 8 o'clock," some two and a half hours earlier.

Lott v. State, Tex.Cr.App., 372 S.W.2d 325, is readily distinguishable. The opinion in that case shows that there was no preliminary routine interrogation, but an immediate arrest and search without probable cause. The Court said:

"In the robbery, which occurred around 8:20 o'clock, p.m., two layaway tickets were taken, together with $2,207 in money. Later in the night, officers went to an apartment at 740 Woodrow Street around nine o'clock, which apartment was located some mile and a half from the scene of the robbery.

"While Officer Stewart and his partner were standing at the front door of the apartment, the appellant *walked out and was immediately placed under arrest and searched.* The sum of $380 in bills was found in his left front pants pocket."

Art. 214 C.C.P. provides:

"The municipal authorities of towns and cities may establish rules author-

izing the arrest, without warrant, of persons found in suspicious places, and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

The majority opinion suggests, if it does not hold, that upon another trial at which the ordinance is introduced, the evidence obtained as a result of the arrest and search will be admissible.

The dire consequence of the holding where, under similar facts, the suspects are momentarily detained for routine interrogation by the sheriff or other peace officers beyond the limits of a city or town should be directed to the attention of the Legislature. Surely the elected sheriff and officers of the Texas Department of Public Safety should be given authority equal to that which Article 214 C.C.P. authorizes a town or city to bestow upon its police in regard to criminal investigation. Both must be consistent with the preservation of the constitutional protection against unlawful search and seizure.

Aside from the unidentifiable money found in appellant's pockets following the interrogation, it appears that appellant is in no position to complain of the introduction of the testimony concerning the fruits of the search. ·

Appellant's companion, Rodriguez, opened the can he was carrying, allowing the officers to see its contents, which he told the officers belonged to appellant. He testified that appellant told him he was going to break into the Nu-Way Cafe and he saw him do so; that appellant brought out a can and a box and he helped him by carrying the can, and that he pleaded guilty and received a suspended sentence for the burglary.

The cheese wrapper upon which was written "Nu-Way" was identified by the arresting officer, Mathis, and was introduced as State's Exhibit No. 2.

John Alejos, operator of the Nu-Way restaurant, identified this exhibit as that he saw at the police station and testified, without objection, "this is what the cheese comes wrapped in with the address of the Nu-Way Cafe from the Hausman," and that all of the other items such as the beef stew, milk, pork chops, fryers and cheese, and the pan, which were shown to him were the same or similar to his missing property.

The prior conviction alleged in the indictment was proved.

The majority conclude that the state's second motion for rehearing should be overruled without written opinion, to which I dissent for the reasons stated.